**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————————x

Alejandro Dario Vazquez Espinoza,                    Case No.

                                    *Plaintiff*,         **COMPLAINT**

        -against-                                    JURY TRIAL DEMANDED

NRP Food Solutions LLC and Nitin Pendharkar,

                                    *Defendants*.

—————————————————————————x

Plaintiff Alejandro Dario Vazquez Espinoza by and through his attorney Nisar Law Group, PC complaining of Defendants NRP Food Solutions LLC and Nitin Pendharkar alleges as follows:

## NATURE OF THE CASE

1. Plaintiff Alejandro Dario Vazquez Espinoza ("Plaintiff" or "Vazquez") was employed as a cook and food delivery worker by Defendant NRP Food Solutions LLC ("NRP" or "the Company") and Defendant Nitin Pendharkar ("Pendharkar") from on or about September 2022 to on or about June 13, 2025. NRP is a food services company that cooks and delivers food to shelters and centers for assisted living, located at 1588 Williamsbridge Road, Bronx, NY 10461. In or around late October or early November 2022, Plaintiff's job duties were expanded to include daily grocery shopping and food delivery in addition to his cooking duties. From that point forward, Plaintiff worked approximately 60 hours per week, six days per week (Sundays through Fridays) from 4:30 a.m. to 2:30 p.m. In or around April 2023, Defendant NRP stopped paying Plaintiff by the hour and began paying him a flat salary of $1,500.00 per week without any overtime compensation for the approximately 20 hours he worked in excess of 40 hours in each workweek, in violation of the Fair Labor Standards Act 29 USC §201 *et seq*. ("FLSA") and New York Labor Law §651 *et seq*., rules and regulations ("NYLL").

2. At all relevant times, Plaintiff was a non-exempt manual laborer who performed manual duties

1

including cooking, plating food for delivery, delivering food to shelters and centers for assisted living, making grocery lists, and performing daily grocery shopping.

3.  Plaintiff had no discretion nor independent judgment, no authority to hire, fire, or supervise other employees and had a manager who directed his day-to-day activities.

4.  Defendants intentionally failed to provide Plaintiff with a proper wage notice acknowledgment in his primary Spanish language at the time of his hire in violation of NYLL §195(1), and failed to provide Plaintiff with proper and accurate wage statements for every workweek worked in violation of NYLL §195(3), to conceal Plaintiff's rights to lawful wages and to prevent him from complaining about the terms and conditions of his employment including Defendants' unlawful payroll policies and practices.

5.  In or around late January or early February 2025, after a former coworker filed a wage complaint against NRP, Defendant Nitin Pendharkar, President of NRP, sent Plaintiff a text message in which he acknowledged that NRP was required by law to provide wage notices to employees and that NRP could not classify Plaintiff as an exempt salaried employee. Thereafter, Defendants subjected Plaintiff to a series of retaliatory adverse employment actions, including reducing his hourly rate from the equivalent of $37.50 per hour to $26.81 per hour, changing his work schedule to afternoon hours without explanation, and ultimately terminating his employment on or about June 13, 2025, in violation of FLSA §215 and NYLL §215.

6.  Accordingly, Plaintiff seeks to recover all overtime wage underpayments, liquidated damages, statutory penalties, compensatory and punitive damages, attorneys' fees and costs, and other and further relief that this Court deems just and proper.

## **JURISDICTION AND VENUE**

7.  This Court has original subject matter jurisdiction under FLSA 29 USC §201 et seq. and 28 U.S.C. §§ 1331 and 1343.

8.  The Court has supplemental jurisdiction over the NYLL §190 et seq. and NYLL §651 et seq.

(Wage Theft Prevention Act "WPTA") state law claims pursuant to 28 U.S.C. § 1367.

9. Plaintiff was at all relevant times a non-exempt manual laborer employed by Defendants who performed primarily manual duties including but not limited to cooking, plating, and packaging food for delivery to shelters and centers for assisted living, delivering food to those facilities, and performing daily grocery shopping. Plaintiff had no discretion or independent judgment. During all relevant times, Plaintiff was a manual laborer and therefore non-exempt from the overtime wage provisions of the FLSA and NYLL.

10. Defendants were at all relevant times an employer within the meaning of the FLSA as they had gross annual revenues of over $500,000 and their employees regularly handled goods that have been moved in or produced for commerce by any person.

11. This Court has personal jurisdiction over the Defendants, pursuant to New York Civil Practice Law and Rules § 301, in that, inter alia, Defendants reside and/or transact business within this State, employed Plaintiff within the State of New York, and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the law of the State of New York, and accordingly may be served with process pursuant to Fed.R.Civ.P. 4(h)(1).

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims have occurred.

**STATEMENT OF FACTS**

**THE PARTIES:**

**PLAINTIFF:**

13. Plaintiff was employed by Defendant NRP Food Solutions LLC from on or about September 2022 to on or about June 13, 2025, working at NRP's facility located at 1588 Williamsbridge Road, Bronx, NY 10461.

14. Plaintiff was hired as a cook in or around September 2022. In or around late October or early

November 2022, Plaintiff's duties were expanded to include daily grocery shopping and food delivery to shelters and centers for assisted living.

15. Plaintiff's duties included but were not limited to: cooking rice, chicken, and other food items; plating and packaging food for delivery; delivering food to shelters and centers for assisted living throughout the Bronx; making daily grocery lists; and performing daily grocery shopping. Plaintiff had no authority to hire, fire, or supervise any staff and had a manager who directed his day-to-day activities, making him a non-exempt employee within the meaning of the FLSA and NYLL.

16. Plaintiff resides at 1869 Wallace Avenue, Apartment 2F, Bronx, NY 10462. Plaintiff's primary language is Spanish.

17. Under the FLSA, the statutory time period is two (2) years, or three (3) years for willful employer violations of the FLSA.

18. Under the NYLL Wage Theft Prevention Act ("WTPA"), the statutory time period is six (6) years.

19. Accordingly, Plaintiff's relevant employment period for purposes of this Complaint is from on or about September 2022 to on or about June 13, 2025.

20. For the first approximately one to two months of his employment (September and October 2022), Plaintiff worked approximately 40 hours per week without overtime.

21. Beginning in or around late October or early November 2022, after his duties were expanded to include grocery shopping and food delivery, Plaintiff regularly worked approximately 60 hours per week, six days per week (Sundays through Fridays), from 4:30 a.m. to 2:30 p.m.

22. From the expansion of his duties in late October or early November 2022 through on or about April 2023, Plaintiff was paid by the hour for his work. Beginning in or around April 2023, Defendant NRP stopped paying Plaintiff by the hour and began paying him a flat salary of $1,500.00 per week for all hours worked, without any overtime compensation for the approximately 20 hours per week he worked

in excess of 40 hours per workweek.

23. Plaintiff was paid this flat weekly salary of $1,500.00 with no overtime compensation from in or around April 2023 through in or around late 2024, during which time he continued to work approximately 60 hours per week.

24. During the relevant time period in which Plaintiff was paid a flat salary of $1,500.00 per week, the FLSA and NYLL required that Plaintiff, as a non-exempt manual laborer in New York City, be compensated at his regular rate for all hours worked up to forty (40) hours in a workweek and at one and one half times his regular hourly rate for all hours worked in excess of 40 hours per workweek.

25. Plaintiff was paid approximately $1,500.00 per week for all hours worked, which equates to a regular hourly rate of approximately $37.50 per hour based on a 40-hour workweek. Plaintiff should therefore have received an overtime rate of approximately $56.25 per hour for the approximately 20 overtime hours he worked each week, in addition to his regular wages.

26. Notwithstanding the statutory overtime wages applicable to Plaintiff, Defendants paid Plaintiff a flat salary of $1,500.00 per week during the relevant salary period with no overtime compensation for hours worked beyond 40 hours in a workweek.

27. Defendants failed to keep accurate time and other business records for Plaintiff in violation of the FLSA and NYLL during the salary period. Plaintiff was not required to record or report his hours worked during the salary period, and no timekeeping system was used until in or around late 2024 when Defendants implemented a punch card system.

28. Plaintiff began receiving paystubs only beginning in or around late 2024, when Defendants implemented the punch card timekeeping system, approximately two months after the punch card was introduced. Prior to that time, Plaintiff received no wage statements accompanying his wage payments.

29. In or around late January or early February 2025, after a former coworker of Plaintiff filed a wage complaint against NRP, Defendant Nitin Pendharkar, President of NRP, sent Plaintiff a text message

in which he acknowledged that NRP was required by law to provide wage notices to employees and that NRP could not classify Plaintiff as an exempt salaried employee.

30. Thereafter, Defendants pressured Plaintiff to complete retroactive wage documentation, including a minimum wage sheet and a time sheet for 2024. Following Plaintiff's compliance with this request, Defendants subjected Plaintiff to a reduction in his effective hourly rate from the equivalent of approximately $37.50 per hour (based on his $1,500.00 per week salary divided by 40 hours) to $26.81 per hour, which reduced Plaintiff's take-home wages.

31. On or about May 5, 2025, Defendants changed Plaintiff's work schedule from his morning shift (4:30 a.m. to 2:30 p.m.) to an afternoon shift (Mondays through Thursdays from 1:00 p.m. to 9:30 p.m. and Sundays from 9:00 a.m. to 5:30 p.m.). Plaintiff was not given any reason for this schedule change and was told that if he did not like the new schedule, he could leave.

32. Plaintiff's employment was terminated on or about June 13, 2025, with Defendants stating the reason as a "reduction in force."

33. Under the FLSA, whenever there is an underpayment of minimum and/or overtime wages, 100% or double damages of the wage underpayments is the norm, not the exception.

34. Under the NYLL rules and regulations, 100% liquidated damages are the norm for underpayments of overtime wages.

35. Accordingly, Plaintiff seeks his underpayments of overtime wages, 100% liquidated damages, attorneys' fees and costs pursuant to the FLSA and NYLL.

36. Defendants intentionally failed to provide Plaintiff with proper wage notice acknowledgments in English and in Plaintiff's primary Spanish language at the time of hire or at any change in wage rates or method of payment including notice of, among other things, the employer's name and contact information, rate of pay including regular or minimum hourly wage rate, overtime wage rate for hours worked in excess of 40 hours per workweek, beginning and ending day of the workweek, pay date, and

frequency of wage payments, in violation of NYLL §195(1) and (2), to conceal Plaintiff's rights to lawful wages and to prevent him from complaining about the terms and conditions of his employment including Defendants' unlawful payroll policies and practices.

37. Defendants intentionally and willfully failed to provide Plaintiff with proper and/or accurate wage statements for every workweek worked and compensated, pursuant to NYLL §195(3), including but not limited to: employer's name and contact information, hours worked for the relevant workweek separating hours worked up to 40 hours and the commensurate regular hourly wage rate, and hours worked in excess of 40 hours per workweek and the commensurate overtime wage rate, in order to conceal Plaintiff's rights to lawful wages and to prevent him from complaining about the terms and conditions of his employment including Defendants' unlawful payroll policies and practices.

38. Accordingly, Plaintiff is entitled to maximum penalties of $5,000 for wage notice violations under NYLL §195(1) and NYLL §198 and maximum penalties of $5,000 for failure to provide proper wage statements in violation of NYLL §195(3) and NYLL §198 plus attorneys' fees and costs.

## **THE DEFENDANTS:**

39. Based upon information and belief, Defendant NRP is a Limited Liability Company organized under the laws of New York State with a principal business location at 1588 Williamsbridge Road, Bronx, NY 10461.

40. Based upon information and belief, NRP is a food services company that cooks and delivers food to shelters and centers for assisted living in the Bronx, New York.

41. Based upon information and belief, Defendant Pendharkar is the President of NRP Food Solutions LLC. Based upon information and belief, during the relevant time period, Pendharkar supervised Plaintiff and controlled the policies and practices of NRP, including the terms and conditions of Plaintiff's employment, including but not limited to Plaintiff's hours of work, wage rate, and payment of wages. Accordingly, Defendant Pendharkar was an "employer" within the meaning of the FLSA and NYLL and

7

is individually liable to Plaintiff for all wage underpayments. Indeed, Defendant Pendharkar utilized Defendant NRP as an alter ego and thereby controlled all major business decisions, including Plaintiff's employment

42. Based upon information and belief, Defendants were joint employers within the meaning of the FLSA during all relevant times as each or jointly had gross annual revenues of over $500,000 and Plaintiff handled goods including but not limited to food products and groceries produced and transported through interstate commerce for performance of his work duties as a cook and food delivery worker.

43. Based upon information and belief, Defendants were joint employers within the meaning of the FLSA and NYLL.

44. At all relevant times, Defendants jointly and severally employed Plaintiff within the meaning of the FLSA and NYLL §2 and §651(5) and (6).

45. Based upon information and belief, Defendants willfully failed to pay Plaintiff proper overtime wages as they knew or acted in reckless disregard that they were in violation of the overtime wage laws under the FLSA and NYLL, as evidenced by, among other things, Defendant Pendharkar's text message acknowledging that NRP could not lawfully classify non-managerial employees as salaried exempt workers.

46. Based upon information and belief, Defendants jointly and severally imposed these unlawful wage and hour employment policies and practices at their workplace and carried out these unlawful policies and practices through their managers who oversaw and directed Plaintiff's work duties and assignments.

47. At all relevant times, Defendants jointly and severally required Plaintiff to work in excess of 40 hours per workweek without proper compensation at one and one half times his regular hourly rate.

48. At all relevant times, Defendants jointly and severally failed to pay Plaintiff proper overtime wages for all hours worked in excess of 40 hours in each workweek.

49. Based upon information and belief, Defendants failed to keep accurate time and other business records for Plaintiff in violation of the FLSA and NYLL.

50. Based upon information and belief, Defendants willfully misclassified Plaintiff as an exempt salaried employee and refused to and/or failed to pay Plaintiff proper overtime wage compensation for all hours worked beyond 40 hours per workweek.

51. In the alternative, Defendants constitute a single integrated enterprise (i.e., related, unified in operation, under common control and for a common business purpose).

**AS AND FOR A FIRST CAUSE OF ACTION**
**Violation of the FLSA, 29 USC §207 rules and regulations**
**(Unpaid Overtime Wages)**

52. Plaintiff repeats and realleges each and every previous allegation made as if fully set forth herein.

53. FLSA §207 requires that non-exempt employees be paid for all hours worked in excess of 40 hours in a workweek at one and one half times the regular or minimum wage rate.

54. As alleged throughout this Complaint, Defendants employed or permitted Plaintiff to suffer work for workweeks longer than forty (40) hours in a workweek during the relevant time period and failed to compensate Plaintiff for his actual hours worked in excess of forty (40) hours per workweek at a rate of one and one half times his lawful regular hourly rate.

55. As alleged throughout this Complaint, from in or around April 2023 through in or around late 2024, Plaintiff regularly worked approximately 60 hours per week, or approximately 20 hours in excess of 40 hours per workweek, for which Defendants paid him a flat weekly salary of $1,500.00 with no overtime compensation whatsoever.

56. As alleged throughout this Complaint, Plaintiff was paid a flat salary of $1,500.00 per week during the relevant salary period. Based on a 40-hour workweek, Plaintiff's regular hourly rate was approximately $37.50 per hour, and his overtime rate should have been approximately $56.25 per hour

for all hours worked beyond 40 hours in a workweek.

57. Defendants' failure to pay Plaintiff proper overtime wages for each hour worked over forty (40) per week was willful within the meaning of 29 U.S.C. §255 as Defendants knew or acted in reckless disregard of their obligation to pay overtime wages, as evidenced by Defendant Pendharkar's own written acknowledgment that NRP could not lawfully classify non-managerial employees as exempt salaried workers.

58. Defendants' failure to comply with the FLSA has caused Plaintiff to suffer repeated underpayments of overtime wages and loss of wages.

59. Accordingly, Plaintiff seeks to recover from Defendants jointly and severally, underpayments of his overtime wages during the relevant time period, in an amount to be determined at trial, for his hours worked in excess of 40 hours in a workweek plus double or 100% liquidated damages of the underpayment of overtime wages, attorneys' fees and costs pursuant to 29 USC §206, 260 et seq.

### AS AND FOR A SECOND CAUSE OF ACTION
**Violation of the NYLL 22 NYCRR 142 *et seq.***
**(Unpaid Overtime Wages)**

60. Plaintiff repeats and realleges each and every previous allegation made as if fully set forth herein.

61. NYLL § 650, et seq.; 12 N.Y.C.R.R. § 142-2.2 required Defendants to pay Plaintiff for all hours worked in excess of 40 hours in a workweek at an hourly rate of one and one half times the applicable regular or minimum hourly wage rate in effect during the relevant time period.

62. As alleged throughout this Complaint, from in or around April 2023 through in or around late 2024, Plaintiff regularly worked approximately 60 hours per week, or approximately 20 hours in excess of 40 hours per workweek.

63. As alleged throughout this Complaint, Plaintiff was paid a flat weekly salary of $1,500.00 for all hours worked during the relevant salary period, which equated to a regular rate of approximately $37.50

per hour based on a 40-hour workweek. Defendants paid Plaintiff no overtime compensation for the approximately 20 hours per week he worked beyond 40 hours in a workweek. Accordingly, Plaintiff was underpaid all of his overtime wages at one and one half times his regular rate for all hours worked beyond 40 hours in a workweek during the relevant salary period.

64. As alleged throughout this Complaint, Defendants had a policy and practice of refusing to pay Plaintiff the lawful overtime wages in effect for Plaintiff's actual hours worked in excess of 40 hours in a workweek during the relevant time period.

65. As a result of these willful underpayments of overtime wages, Plaintiff suffered loss of income and sustenance during the relevant time period.

66. Accordingly, Plaintiff seeks to recover from Defendants jointly and severally, underpayments of his overtime wages in amounts to be determined at the time of trial, 100% of these underpayments as liquidated damages, attorneys' fees and costs pursuant to NYLL 650 *et seq.*, NYCRR §142 *et seq.*

## AS AND FOR A THIRD CAUSE OF ACTION
### Violation of the NYLL 195(1)
### (Wage Notice Acknowledgment Violation)

67. Plaintiff repeats and realleges each and every previous allegation made as if fully set forth herein.

68. NYLL §195(1) required Defendants to provide at the time of Plaintiff's hire, and at the time of any change in terms of pay, a written notice in English and in the employee's primary language, including but not limited to: the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a pairt of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer.

11

69. As alleged throughout this Complaint, Defendants failed to maintain proper business records including time records and underpaid Plaintiff in overtime wage compensation for his actual hours worked during the relevant time period.

70. As alleged throughout this Complaint, Defendants intentionally and willfully failed to provide such notice to Plaintiff in his primary Spanish language at the time of his hire in September 2022 or at any time there was a change in his pay rate, in violation of NYLL §195, to conceal his wage and hour claims against Defendants and to prevent Plaintiff from complaining about his wages to the Department of Labor, the courts, or the employer, including but not limited to failure to pay Plaintiff proper overtime wages. Due to Defendants' concealment of Plaintiff's wage claims, Plaintiff was also forced to suffer repeated underpayments of his wages or sustenance that he needed at the time his wages were due.

71. Due to Defendants' violations of NYLL §195(1), Plaintiff is entitled to recover from Defendants jointly and severally, statutory damages of Two Hundred and Fifty dollars ($250) per workday that the violation occurred, up to a maximum of Five Thousand Dollars ($5,000), attorneys' fees and costs pursuant to NYLL § 198 (1-b).

**AS AND FOR A FOURTH CAUSE OF ACTION**
**Violation of the NYLL § 195(3)**
**(Failure to Provide Accurate Wage Statements)**

72. Plaintiff repeats and realleges each and every previous allegation made as if fully set forth herein.

73. NYLL § 195(3) requires employers to provide their employees with proper and accurate written wage statements for every workweek an employee is compensated with wages that include, without limitation, hourly or salary wage rates, hours of work performed in each workweek in separate categories of regular hours up to 40 hours and overtime hours worked beyond 40 hours, and the basis of pay for each category of hours.

74. As alleged throughout this Complaint, Defendants failed to maintain proper and accurate time

records that accurately reflected Plaintiff's regular and overtime hours of work from on or about September 2022 through in or around late 2024.

75. As alleged throughout this Complaint, Defendants failed to provide Plaintiff with proper and accurate wage statements accompanying his wage payments from on or about September 2022 through in or around late 2024. Plaintiff only began receiving paystubs in or around late 2024 after Defendants implemented a punch card timekeeping system.

76. Plaintiff was damaged by Defendants' failure to provide proper wage statements because it misled Plaintiff to believe that Defendants were properly paying his wages when in fact Defendants were in violation of the overtime wage provisions of the NYLL, and it prevented Plaintiff from complaining about or seeking proper payments of his overtime wages. Due to Defendants' concealment of Plaintiff's wage claims, Plaintiff was also forced to suffer repeated underpayments of his wages or sustenance that he needed at the time his wages were due.

77. Due to Defendants' violations of NYLL §195(3), Plaintiff is entitled to recover from Defendants jointly and severally, statutory penalties or damages of Two Hundred and Fifty dollars ($250) per workday that the violation occurred, up to a maximum of Five Thousand Dollars ($5,000), pursuant to NYLL § 198 (1-d).

**<u>AS AND FOR A FIFTH CAUSE OF ACTION</u>**
**Retaliation in violation of FLSA §215**

78. Plaintiff repeats and realleges each and every previous allegation made as if fully set forth herein.

79. FLSA 29 USC §215(a)(3) states in relevant part, "(a) ... It shall be unlawful for any person ... (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter ..."

80. Rights to overtime wage payments to employees who worked beyond 40 hours in a workweek are protected under the FLSA 29 USC §207 within the meaning of "this chapter" as referenced in FLSA §215 detailed above.

81. The statute of limitations under FLSA §215 is two (2) years, and three (3) years for Defendants' willful violation of the FLSA.

82. As alleged throughout this Complaint, Plaintiff was continuously employed by Defendants from on or about September 2022 to on or about June 13, 2025, and was therefore qualified for his position.

83. As alleged throughout this Complaint, after a former coworker filed a wage complaint against NRP, Defendant Pendharkar sent Plaintiff a text message acknowledging NRP's wage and hour obligations, and Defendants thereafter pressured Plaintiff to complete retroactive wage documentation. Plaintiff engaged in protected activity within the meaning of the FLSA by asserting and/or exercising his rights to lawful wages and overtime compensation, and by participating in proceedings related to wage and hour violations under the FLSA.

84. Following Plaintiff's engagement in protected activity, Defendants subjected Plaintiff to a series of adverse employment actions in close temporal proximity thereto, including: (a) reducing his effective hourly rate from the equivalent of approximately $37.50 per hour to $26.81 per hour; (b) changing his work schedule on or about May 5, 2025 from his morning shift (4:30 a.m. to 2:30 p.m.) to an afternoon shift without explanation and telling him that if he did not like the change, he could leave; and (c) terminating his employment on or about June 13, 2025, with the stated reason of a "reduction in force."

85. As a result of Defendants' adverse employment actions taken against Plaintiff in close temporal proximity to and/or in retaliation for Plaintiff's engagement in protected activity, Plaintiff is entitled to damages pursuant to FLSA 29 USC §215(a)(3), including but not limited to back pay, liquidated damages, compensatory damages including mental anguish damages, punitive damages, and attorneys' fees and

costs in amounts to be determined at the time of trial.

## AS AND FOR A SIXTH CAUSE OF ACTION
### Retaliation in violation of NYLL §215

86. Plaintiff repeats and realleges each and every previous allegation made as if fully set forth herein.

87. NYLL §215 states in relevant part, "1. (a) No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner ..."

88. As alleged throughout this Complaint, Plaintiff was continuously employed by Defendants from on or about September 2022 to on or about June 13, 2025 and was therefore qualified for his position.

89. As alleged throughout this Complaint, Plaintiff engaged in protected activity within the meaning of the NYLL when he asserted and/or exercised his rights to lawful overtime wages, and by participating in proceedings related to wage and hour violations under the NYLL, in good faith belief that Defendants had violated the FLSA and NYLL by failing to pay him proper overtime wages and/or by reducing his pay.

90. As alleged throughout this Complaint, following Plaintiff's engagement in protected activity, Defendants subjected Plaintiff to a series of adverse employment actions in close temporal proximity thereto, including: (a) reducing his effective hourly rate from the equivalent of approximately $37.50 per hour to $26.81 per hour; (b) changing his work schedule on or about May 5, 2025 from his morning shift (4:30 a.m. to 2:30 p.m.) to an afternoon shift without explanation and telling him that if he did not like the

15

change, he could leave; and (c) terminating his employment on or about June 13, 2025, with the stated reason of a "reduction in force."

91. As alleged throughout this Complaint, Plaintiff's discharge and the other adverse employment actions taken against him in retaliation for asserting and/or exercising his rights under the NYLL would deter a reasonable employee from similarly complaining or filing a complaint about Defendants' unlawful employment practices such as unlawful pay practices.

92. Based on Defendants' retaliation against Plaintiff in violation of NYLL §215, Plaintiff seeks (a) back pay; (b) 100% liquidated damages; (c) compensatory and punitive damages; (d) attorneys' fees and costs; and (e) pre- and post-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE** named Plaintiff Alejandro Dario Vazquez Espinoza respectfully requests, in his favor and against the named Defendants NRP Food Solutions LLC and Nitin Pendharkar (collectively, "Defendants") jointly and severally, an order and judgment for the following relief:

**A.**   declaring Defendants jointly and severally violated FLSA §207 and NYLL §651 *et seq.* and NYCRR §142 *et seq.* for underpayments of overtime wages to Plaintiff for all hours worked in excess of 40 hours in a workweek at one and one half times his regular hourly wage rate in effect during the relevant time period, in the FIRST and SECOND CAUSES OF ACTION; and

**B.**   awarding to Plaintiff underpayments of overtime wage damages together with double or 100% of the underpayments as liquidated damages, attorneys' fees and costs pursuant to FLSA §201 *et seq.* and NYLL 651 *et seq.*, NYCRR 142 *et seq.* as sought in the FIRST and SECOND CAUSES OF ACTION; and

**C.**   declaring Defendants jointly and severally liable for and awarding Plaintiff $5,000 in penalties, plus attorneys' fees and costs pursuant to NYLL §195(1) and §198 for Defendants' failure to provide Plaintiff with proper and accurate wage notice acknowledgments in violation of NYLL §195(1)

in the THIRD CAUSE OF ACTION; and

**D.** declaring Defendants jointly and severally liable for and awarding Plaintiff $5,000 in penalties, plus attorneys' fees and costs pursuant to NYLL §195(3) and §198 for Defendants' failure to provide Plaintiff with proper and accurate wage statements in violation of NYLL §195(3) in the FOURTH CAUSE OF ACTION; and

**E.** declaring Defendants jointly and severally liable for retaliation against Plaintiff in violation of FLSA §215 and/or NYLL §215 in retaliation for Plaintiff's engagement in protected activity as alleged in the FIFTH and SIXTH CAUSES OF ACTION; and

**F.** awarding Plaintiff damages for retaliation in violation of FLSA §215 and/or NYLL §215 in the FIFTH and SIXTH CAUSES OF ACTION including back pay, 100% liquidated damages, punitive damages, compensatory damages, attorneys' fees and costs; and

**G.** any and all other further relief as this Court shall deem just and proper.

Dated:  July 15, 2026

**NISAR LAW GROUP, PC**

*/s/ Maria Cedeno Cassinelli*
**Maria Cedeno Cassinelli, Esq.**
Bar No. 6198592
One Grand Central Place
60 East 42nd Street, Suite 4600
New York, NY 10165
Ph. (212) 600-9534

*Attorneys for Plaintiff*
*Alejandro Dario Vazquez Espinoza*
